ESCAMBRÓN DEVELOPMENT CORPORATION, Petitioner and Appellee, *v.* COMMONWEALTH OF PUERTO RICO, Respondent and Appellant.

No. 12586. Submitted June 30, 1959.—Decided May 18, 1961.

*Francisco Espinosa, Acting Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *Edgar S. Belaval, Assistant Attorney General,* for appellant. *René Benítez* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Since the commencement of this suit, the Commonwealth of Puerto Rico has challenged the jurisdiction of the courts to entertain the same, on the ground that it has not given its consent to be sued. This is a preliminary question, which if it prevails, would prevent us from deciding on the merits the controversy between the parties.

By a private contract executed on December 15, 1931, The People of Puerto Rico, represented by its Commissioner of the Interior and by the President of the Commission of

the Muñoz Rivera Park, Mr. Guillermo Esteves, by virtue of the power granted to him by Act No. 84 of August 2, 1923, leased to Mr. Félix Benítez Rexach a parcel of land in the surroundings of the place called "Escambrón" to be used for the construction of a beach resort and recreation place in the area of the Muñoz Rivera Park.

Clause 4 of said contract provides:

"4.—The lease shall be for a Fifteen-Year (15) term and will begin to run one year after the signing of this contract, whereby lessee Félix Benítez Rexach is bound to invest in the construction a sum not less than Thirty Thousand ($30,000) Dollars, and it being further agreed that for every Two Thousand ($2,000) Dollars invested by Félix Benítez Rexach over the stipulated sum of Thirty Thousand ($30,000) Dollars, he shall have the right to one more year of lease, provided, however, that the lease term will not be more than Thirty (30) years regardless of the sum additionally invested."

Clause 5 provided that if after the end of one year Benítez Rexach had not yet started the construction, the contract would be rescinded and he would be obliged to pay to the Insular Government a compensation of $1,000 and clause 15 provided the following:

"15.—This contract is subject to the contingency that the Government of the United States conveys the land of the Escambrón Reservation to the People of Puerto Rico."[1]

On March 10, 1932, Benítez Rexach wrote a letter to Guillermo Esteves, Commissioner of the Interior, informing him

---

[1] This clause was included because at that time the People of Puerto Rico did not yet have a title over the leased parcel of land. Act No. 33 of June 17, 1925 authorized the Governor to convey certain properties to the Government of the United States, which it did, on condition that the United States would thereby convey to the People of Puerto Rico the grounds of the Military Reservation known as "El Escambrón". While the barter transactions took place the federal law was amended whereby the United States was deprived of the power to carry out those transactions by proclamation and requiring specific legislation which was not obtained until the year 1938.

that the difficulties which had arisen between the military authorities and the Insular Government had caused a delay in the construction of the beach resort at the Escambrón and he prayed that the lease contract be amended in the sense that the same "would begin to run one year after the date when the Federal Government officially conveys said grounds to the Insular Government, thereby paying the rent one year after they have been released to me."

By a letter dated March 17, 1932, the Commissioner of the Interior answered Benítez Rexach in the following terms:

"Your request is granted pursuant to clause 15 which appears in an additional explanatory note in the lease contract; that is, that your contract will go into effect on the same date those grounds are conveyed to the People of Puerto Rico, at which time you may dispose freely of the leased land, instead of going into effect on the date on which the contract was signed as stated in clause 4.

"And for your own knowledge and proper purposes I write this letter."

The beach resort constructed by Benítez Rexach was inaugurated on December 30, 1932.

On November 8, 1938, the Government of the United States executed a deed of conveyance of the Escambrón grounds in favor of The People of Puerto Rico, and from that date on, The People of Puerto Rico started to collect rentals from Benítez Rexach on said property.

By public deed of February 17, 1940, Benítez Rexach assigned his lease contract to the Escambrón Development Corporation.

By deed of April 17, 1940, the then Commissioner of the Interior and President of the Park Commission, José Enrique Colom approved the lease contract in all its parts, made by his predecessor Guillermo Esteves, after the area of the leased parcel of land was confirmed, and after it was acknowledged that Benítez Rexach had invested in the con-

struction of the beach resort more than $60,000 for which the term of the lease was automatically extended for the additional term provided by clause number four of the private lease contract of December 15, 1931.

In 1955 Escambrón Development Corporation filed an action for a declaratory judgment in the Superior Court, San Juan Part, against the Commonwealth of Puerto Rico alleging that there was a discrepancy in the interpretation of the lease contract mentioned so often, with regards to the date of its expiration. It alleges that respondent's contention is that the term of the lease begins to run one year after the execution of private contract of December 15, 1931 and that the letter of the Commissioner of the Interior whereby this term is altered lacks validity and legal efficacy, while petitioner alleges that pursuant to the terms of said letter, the term of the lease goes into effect on November 8, 1938, date on which the leased grounds were conveyed to The People of Puerto Rico.

Respondent answered denying that plaintiff's contention was correct and he further alleged that all the questions of fact or of law involved in the case were previously decided against petitioner's predecessor in the case of *Benítez* v. *Treasurer*, 54 P.R.R. 712.

Respondent also challenged the jurisdiction of the court on the ground that it had not given its consent to be sued, an issue which was decided against respondent.

The case having been submitted on a stipulation of facts and the deposition of Guillermo Esteves, the trial court, after making findings of fact and conclusions of law rendered judgment stating that the lease term should go into effect on the date on which the leased grounds were conveyed to The People of Puerto Rico—November 8, 1938—and that therefore said contract shall expire on November 8, 1968.

Respondent charges here that the trial court committed the following errors:

"1—The trial court committed a serious error of law in deciding that the lease contract expires on November 8, 1968.

"2—The trial court committed a serious error of law in assuming jurisdiction in this case."

■■ We believe that the second error was committed and this forecloses us from considering and deciding the controversy regarding the interpretation of the lease contract.[2]

The doctrine that the state is immune from suit is as well-known as it is traditional. It has been repeatedly decided in this jurisdiction that the Government of Puerto Rico cannot be sued without its consent. *Meléndez* v. *Commonwealth*, 81 P.R.R. 798 and cases cited therein. It may, however, waive its immunity and it has done so through general and special Acts approved by the Legislative Assembly. See the *Meléndez* case, *supra*.

On August 16, 1955, when this action was filed, Act No. 104 of June 29, 1955 was already in effect authorizing claims and suits against the Commonwealth.[3] In the pertinent part said Act provides:

"Section 2.—Authorization is hereby granted to sue the Commonwealth of Puerto Rico before the Court of First Instance of Puerto Rico for the causes set forth in the following actions:

"(a) Actions for damages to person or property up to the sum of $15,000 caused by a culpable or negligent act or omission of any officer, agent, or employee of the Commonwealth, or of any other person acting in an official capacity within the scope of his duty, office, or employment.

---

[2] It is evident that the controversy shall be raised once more before the courts whether the Government intends to acquire the property leased on the date when, according to its opinion the term of said contract expires. If on the contrary it deems it convenient and beneficial that the controversy between the parties be decided by the courts prior to said date, the Government could file a petition for a declaratory judgment similar to this one.

[3] This Act (32 L.P.R.A. §§ 3077 *et seq.*) repealed Act No. 76 of April 13, 1916 as amended, which authorized suit against The People of Puerto Rico in certain cases.

"(b) Actions to recover real or personal property or an interest therein, with or without compensation for damages sustained by the said property or on account of income and profits therefrom, and for the survey of rural property.

"(c) Civil actions in which the amount claimed does not exceed $15,000 in principal and which are based on the Constitution, or on any law of Puerto Rico, or on any regulation of any department or division of the Commonwealth, or on any contract, express or tacit, with the Commonwealth." (32 L.P.R.A. Cumm. Supp. § 3077.)

Prior to the effectiveness of this Act there already existed in Puerto Rico the Declaratory Judgments Act of April 25, 1931 and effective ninety days after its approval. This Act, however, does not grant the consent of the Government to be sued under its provisions. The immunity of the state from suit is not altered or modified by the "Declaratory Judgments Act". *Valiente & Co.* v. *Cuevas, Comm'r*, 65 P.R.R. 169.

 We then turn to Act No. 104 in order to determine whether plaintiff's case falls within its provisions. By subdivision (b) of § 2, authority is granted to sue the State in actions to recover real or personal property, or an interest therein, with or without compensation for damages or on account of income and profits therefrom, and for survey of rural property.

Obviously the action filed by petitioner does not aim at recovering property or interests therein, and much less does it aim at obtaining a survey. Petitioner's contention that in its case this subdivision vested jurisdiction to the court is completely lacking in merits.

Subdivision (c) does not vest the court with jurisdiction. Said subdivision authorizes "civil actions in which the amount claimed does not exceed $15,000 in principal and which are based on . . ., any contract, express or tacit, with the Commonwealth."

What petitioner prays in the action at bar is that the court, through a declaratory judgment, settle the uncertainty regarding the expiration of the lease contract. In truth, this is not a question of any amount claimed based on the provisions of the contract. The only thing that the trial court decided in its judgment, after assuming jurisdiction of the case, was that the lease expired on November 8, 1968 and not on the former date alleged by the Government.

In order to agree with petitioner's contention we would have to interpret the above-mentioned subdivision (c) as authorizing a claim in the actions based on any contract, express or tacit, with the Commonwealth. However, the actions authorized by said subdivision are those involving claims for a limited amount not exceeding $15,000 and based on the Constitution, or on any law of Puerto Rico, or on any regulation of any department or division of the Commonwealth, or on any contract, express or tacit, with the Commonwealth.

Act No. 104 must be construed strictly in favor of the sovereign and we may not include in its provisions any such action not expressly included by the Legislature. *Santiago* v. *People*, 74 P.R.R. 196; *Campis* v. *People*, 67 P.R.R. 366; *Acevedo* v. *People*, 69 P.R.R. 402; *Valiente & Co.* v. *Cuevas, Comm'r, supra.*

In view of the foregoing the judgment rendered by the Superior Court, San Juan Part, is reversed and another rendered dismissing the complaint for lack of jurisdiction.

Mr. Justice Belaval did not participate herein.

Mr. Justice Hernández Matos dissented.